PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

JOSE GONZALO SOSA-CARABANTES,

  *Defendant-Appellant.*

No. 08-4109

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:07-cr-00198-FDW-1)

Argued: January 30, 2009

Decided: April 1, 2009

Before SHEDD and AGEE, Circuit Judges, and Arthur L.
ALARCÓN, Senior Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by
designation.

---

Vacated and remanded by published opinion. Senior Judge
Alarcón wrote the opinion, in which Judge Shedd and Judge
Agee concurred.

---

## COUNSEL

**ARGUED:** Matthew Segal, FEDERAL DEFENDERS OF
WESTERN NORTH CAROLINA, INC., Asheville, North

Carolina, for Appellant. Adam Christopher Morris, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Steven Slawinski, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

---

## OPINION

ALARCÓN, Senior Circuit Judge:

Appellant, Jose Sosa-Carabantes ("Sosa") appeals from the district court's imposition of a two-point enhancement pursuant to United States Sentencing Guidelines § 4A1.1(e) ("U.S.S.G. § 4A1.1(e)") relating to the sentence imposed for his conviction under 8 U.S.C. § 1326. Sosa contends that at the time Immigration and Customs Enforcement ("ICE") found him, for purposes of § 1326, he had not yet been sentenced and the two-point enhancement should not have been applied. We hold that when an Immigration Detainer-Notice of Action, Form I-247 ("Immigration Detainer"), is issued by a local law enforcement officer who is a participant in the cross-designation program, under 8 U.S.C. § 1357(g), ICE has actual knowledge that the immigrant is in the United States and, thus, has "found" the immigrant for purposes of 8 U.S.C. § 1326. In this case, ICE found Sosa prior to his state court conviction or sentence and, consequently, the two-point enhancement was improperly applied. We remand for resentencing in accordance with the views expressed in this opinion.

I

Appellant Sosa is a citizen of El Salvador. The United States deported Sosa on May 15, 2003. Some time after that,

Sosa illegally reentered the United States. On March 3, 2007, Sosa was arrested in Mecklenburg County, North Carolina for assaulting a child under twelve. He was transported to the Mecklenburg County Jail.

ICE and the Mecklenburg County Sheriff's Office work together pursuant to § 287(g) of the Immigration and Nationality Act ("the 287(g) Program"). Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-546 (1996), codified at 8 U.S.C. § 1357(g) (2000).[1] The 287(g) Program permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement. 8 U.S.C. § 1357(g)(1). ICE trains the local law enforcement officers who participate in the 287(g) Program. 8 U.S.C. § 1357(g)(2). These officers are subject to the supervision of the U.S. Attor-

---

[1]Section 1357(g)(1)-(2) (2000) reads as follows:

g) Performance of immigration officer functions by State officers and employees.

(1) [T]he Attorney General may enter into a written agreement with . . . any political subdivision of a State, pursuant to which an officer . . . who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States (including the transportation of such aliens across State lines to detention centers), may carry out such function at the expense of the State or political subdivision and to the extent consistent with State and local law.

(2) An agreement under this subsection shall require that an officer or employee of a State or political subdivision of a State performing a function under the agreement shall have knowledge of, and adhere to, Federal law relating to the function, and shall contain a written certification that the officers or employees performing the function under the agreement have received adequate training regarding the enforcement of relevant Federal immigration laws.

ney General for their activities under the act. 8 U.S.C. § 1357(g)(3).[2]

On February 27, 2006, ICE and the Mecklenburg County Sheriff's Office entered into an agreement pursuant to the 287(g) Program. Twelve deputies in the Mecklenburg County Sheriff's Office were certified under the 287(g) Program. These deputies were authorized to screen individuals arrested in Mecklenburg County for immigration violations. As part of the 287(g) Program, the Mecklenburg County Sheriff's Office had access to ICE's databases of fingerprints and photographs to determine an arrestee's immigration status.

After Sosa was arrested on March 3, 2007, the ICE office in Charlotte, North Carolina sent an Immigration Detainer to the Mecklenburg County Jail. Carl Smith, who identified him-self as "Deputy Sheriff 287g," signed the Immigration Detainer. The Immigration Detainer stated that ICE had initiated an investigation to determine whether Sosa was subject to removal, and directed the Mecklenburg County Jail to hold Sosa for 48 hours to provide ICE adequate time to assume custody of Sosa. The Immigration Detainer contained Sosa's full name, birth date, nationality, and "A-file" number.[3]

---

[2]Section 1357(g)(3) reads as follows:

> In performing a function under this subsection, an officer or employee of a State or political subdivision of a State shall be subject to the direction and supervision of the Attorney General.

[3]An A-file number or alien file number is "by definition, a means of identification of an actual individual because 'they are assigned to a single person and, once used, are not reassigned to anyone else.'" *United States v. Crounsset*, 403 F. Supp. 2d 475, 482 (E.D. Va. 2005) (quoting *United States v. Montejo*, 353 F. Supp. 2d 643, 649 (E.D. Va. 2005)). "An INS A-File identifies an individual by name, aliases, date of birth, and citizenship, and all records and documents related to the alien are maintained in that file." *United States v. Blanco-Gallegos*, 188 F.3d 1072, 1075 n.2 (9th Cir. 1999) (quotations omitted).

On May 15, 2007, Sosa was convicted in state court of assaulting a minor under the age of twelve. He was sentenced to serve 150 days of imprisonment. Sosa was released on July 30, 2007 and transferred directly to ICE's custody. In the Record of Deportable/Inadmissible Alien, Form I-213, completed on July 30, 2007, Mark Smith, who identified himself as "Deputy Sheriff - ICE 287(g)," wrote: "On 03/03/2007 [Sosa] was arrested . . . transported to the Mecklenburg County Jail in Charlotte, NC where being encountered by Sheriff's Deputies pursuant to the 287(g) program. Subject was determined to be in the United States in violation of the Immigration and Nationality Act."

ICE Special Agent Darren Vazquetelles received Sosa's immigration file on August 3, 2007. He concluded that there was probable cause to believe Sosa reentered the United States illegally. He filed a complaint on August 8, 2007, which alleges that Sosa illegally reentered the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). Special Agent Vazquetelles's affidavit in support of the complaint states that the Mecklenburg County Sheriff's Office provided information to ICE on August 3, 2007 that indicated Sosa was a positive match of a previously deported felon.

Sosa was indicted on August 29, 2007. The indictment alleged that Sosa unlawfully reentered, or was found in, the United States on or about August 3, 2007 in Mecklenburg County, North Carolina. On September 7, 2007, Sosa pled guilty to violating 8 U.S.C. § 1326(a) and (b)(2).

The district court held a sentencing hearing on September 11, 2007. Over Sosa's objection, the district court included a two-point enhancement, pursuant to U.S.S.G. § 4A1.1(e),[4] and

---

[4]U.S.S.G. § 4A1.1(e) reads:

Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.

sentenced Sosa to 46 months' imprisonment, the low end of the Guidelines range, Offense Level 17, Criminal History Category V.[5] Sosa filed a timely appeal from the district court's judgment.

A

In his appeal, Sosa contends that the district court erred in applying the enhancement under U.S.S.G. § 4A1.1(e) because ICE, through the 287(g) Program, knew of his illegal status on the day he was arrested. "In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006) (citing *United States v. Ebersole*, 411 F.3d 517, 535-36 (4th Cir. 2005)).[6]

B

Pursuant to U.S.S.G. § 4A1.1(e), the district court applied a two-point enhancement to Sosa's sentence for illegally reentering the United States, a violation of 8 U.S.C. § 1326. Section 1326 reads, in pertinent part, as follows:

> Any alien who (1) has been . . . deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter (2) enters, attempts to enter, or is at any time *found in*, the United States . . . shall

---

[5]The transcript of the court's sentencing proceeding indicates that Sosa was sentenced pursuant to an Offense Level 17, Criminal History Category III. The parties concede this is a typographical error and Sosa was, in fact, sentenced pursuant to Offense Level 17, Criminal History Category V.

[6]The Government argues a plain error standard of review should apply because the issue of sentencing was not preserved. However, the transcript of the sentencing hearing shows that Sosa raised the issue of when he was "found" and argued that the two point enhancement should not be applied.

be fined under Title 18, or imprisoned not more than
2 years, or both.

8 U.S.C. § 1326(a)(1)-(2) (emphasis added). The Government charged Sosa with being found in the United States after being deported or removed.

U.S.S.G. § 4A1.1(e) provides as follows:

Add 2 points if the defendant committed the instant offense[7] less than two years after release from imprisonment *on a sentence* counted under (a) or (b)[8] or while in imprisonment or escape status *on such a sentence*. If 2 points are added for item (d), add only 1 point for this item.

(Emphasis added.) Thus, whether or not U.S.S.G. § 4A1.1(e) was properly applied depends on when ICE found Sosa. The two possible dates are March 3, 2007, when a participant in the 287(g) Program signed a receipt of the Immigration Detainer, or August 3, 2007 when Special Agent Vazquetelles received Sosa's immigration file. The date Sosa was found in the United States is dispositive because if he was found on March 3, 2007, the U.S.S.G. § 4A1.1(e) enhancement would not apply, as he had not yet been sentenced for any crime.

The day Sosa was arrested, March 3, 2007, ICE served an Immigration Detainer on the Mecklenburg County Jail. The

---

[7]The instant offense is Sosa's violation of section 1326.

[8]Section 4A1.1(a)-(b) reads as follows:

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

U.S.S.G. § 4A1.1(b) is the relevant section here because the prior sentence related to Sosa's March 3, 2007 arrest and May 15, 2007 conviction which resulted in a sentence of 150 days of imprisonment.

Immigration Detainer identified Sosa by name, birth date, place of birth, and A-file number. Moreover, a local officer, who was certified to perform immigration enforcement duties pursuant to the 287(g) Program, signed the Immigration Detainer. Accordingly, ICE possessed the information necessary to determine Sosa's immigration status on March 3, 2007 because the acts of such a 287(g) Program officer are the acts of ICE. The information provided to the Mecklenburg County Sheriff's Office was sufficient to identify Sosa as an illegal alien. Because the Sheriff's Office participates in the 287(g) Program, ICE had notice of Sosa's illegal status on March 3, 2007.

The Government asks this court to disregard the information in the Immigration Detainer because it was issued prior to a complete investigation. It argues:

> On its face, [an Immigration Detainer] suggests that the investigation will be completed in a timely fashion, but holding the detainee for 48 hours is the *minimum* required of the custodial entity. What the detainer does *not* say is that the investigation will be completed within that time period . . . . Sosa points to no case or regulation or contract that indicates that the investigation *must* occur within a certain time.

Appellee's Br. 6 (citations omitted, emphasis in original). This argument completely ignores the fact that an officer participating in the 287(g) Program was aware that Sosa was in the country illegally on March 3, 2007 because of the information set forth in the Immigration Detainer.

The Government also asserts that there is no evidence in the record that ICE actually investigated or became aware of Sosa until the end of his sentence. This argument is also contrary to the evidence in the record that an ICE agent was aware, on March 3, 2007, that Sosa had illegally reentered the United States.

In summary, the record shows that an ICE agent had knowledge on March 3, 2007 that Sosa had reentered the United States illegally and was subject to prosecution pursuant to § 1326.

Accordingly, Sosa was found on March 3, 2007 for purposes of § 1326 and the enhancement under U.S.S.G. § 4A1.1(e) did not apply. Applying U.S.S.G. § 4A1.1(e), the trial court was authorized to add two points if Sosa committed a § 1326 offense, i.e. being found in the United States, less than two years after he was released on the state sentence for assaulting a child under twelve, or while he was imprisoned on the state sentence for assaulting a child under twelve. But Sosa committed the § 1326 offense before he was sentenced on the state charge — not after being sentenced nor while imprisoned on the state sentence. Because Sosa was not sentenced until May 15, 2007, the sentence enhancement under U.S.S.G. § 4A1.1(e) did not apply as Sosa was not "found in" the United States within two years after release on any sentence or while imprisoned on any sentence.[9]

Deducting the two-point enhancement will cause Sosa to fall into Offense Level 17, Criminal History Category IV with the Guideline range of 37 to 46 months' imprisonment. He was originally sentenced to 46 months under an Offense Level 17, Criminal History Category V, with the Guideline range being 46 to 57 months. The Government asserted at oral argument that we are precluded from remanding for resentencing, under *United States v. Evans*, 416 F.3d 298 (4th Cir. 2005), because Sosa was sentenced to a term that falls within the Guidelines range he seeks in this appeal. *Evans* is not dispositive as it was reviewed on a plain error standard addressing a Sixth Amendment challenge to a sentence. *Id.* at 300.

---

[9]Sosa also argued that the Government's failure to disclose the Immigration Detainer constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Our holding moots this argument because the failure to disclose this document no longer causes any prejudice to Sosa.

Moreover, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court explained that in exercising its discretion in imposing a sentence, a district court must *begin* by correctly calculating the appropriate Guidelines range. *Id.* at 596; *see United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007) (stating "In *Gall*, the Court instructed that the sentencing court should first calculate the applicable Guidelines range. This starting point furthers Congress' desire for efficient administration and nationwide consistency in sentencing.") (citations omitted). Accordingly, this matter must be remanded for resentencing.

## CONCLUSION

Applying the rules set forth above, the district court erred by computing Sosa's Criminal History Category as a Level V instead of a Level IV because of its error in determining when Sosa was found in the United States. We vacate the district court's sentence and remand for resentencing.

*VACATED AND REMANDED*